IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# PHYLLIS SCHWARTZ v. LOOKOUT MOUNTAIN CAVERNS, INC., ET AL.

**Interlocutory Appeal from the Circuit Court for Hamilton County**
**No. 96CV1876    W. Neil Thomas, III, Judge**

**No. E1999-01142-COA-R9-CV - Decided May 8, 2000**

Following entry of judgment on a jury verdict, the Trial Court granted Defendants a new trial based upon allegations in the affidavit of one of the jurors. Plaintiff was granted interlocutory appeal limited to whether or not the Trial Court erred in granting Defendants' Motion For New Trial based on the information contained in the juror's affidavit submitted by Defendants in support of their Motion For New Trial. Because the affidavit does not fall under any of the three exceptions to exclusion of juror testimony found in T.R.E. 606(b), the Trial Court erred in accepting the affidavit into evidence on the issue of a new trial. No other evidence supported Defendants' motion for new trial. Because no admissible evidence was properly before the Court, the Order for new trial is reversed and this lawsuit remanded for enforcement of the judgment previously entered on the verdict of the jury.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

Swiney, J., delivered the opinion of the court, in which Franks and Susano, JJ. joined.

Richard A. Schulman, Chattanooga, Tennessee, for the appellant, Phyllis Schwartz.

Samuel R. Anderson, Chattanooga, Tennessee and Lisa E. Ferraro, Chattanooga, Tennessee, for the appellees, Lookout Mountain Caverns, Inc. and Ruby Falls.

## OPINION

Plaintiff/Appellant Phyllis Schwartz ("Plaintiff") prevailed in a jury trial of her tort claims against Defendants/Appellees Lookout Mountain Caverns, Inc. and Ruby Falls ("Defendants"). After entry of judgment on the verdict of the jury awarding $20,000.00 damages and apportioning comparative fault forty-nine percent to Plaintiff and fifty-one percent to Defendants, Defendants filed a motion for new trial. The motion for new trial was based upon

allegations in the affidavit of one of the jurors, who indicated that the verdict included amounts for particular damages not offered into evidence. Based upon this affidavit, the Trial Court granted Defendants' motion for new trial. We granted Plaintiff's Interlocutory Appeal under T.R.A.P. 9 and limited the issue to whether or not the Trial Court erred in granting Defendants' Motion For New Trial based on the information contained in the juror's affidavit submitted by Defendants in support of their Motion For New Trial. The decisive factor in resolving this issue is the admissibility of the juror's affidavit under T.R.E. 606(b). Because the affidavit does not contain evidence admissible under any of the three exceptions to exclusion of juror testimony under T.R.E. 606(b), Defendants' motion for new trial is unsupported by admissible evidence, and the Order of the Trial Court granting a new trial is reversed.

## Background

Plaintiff filed suit September 16, 1996, alleging tort damages from a fall on the premises of Defendants in Hamilton County, Tennessee. Trial was held May 12 - 14, 1999, with a jury verdict returned in favor of Plaintiff in the amount of $20,000.00, allocating comparative fault forty-nine percent to Plaintiff and fifty-one percent to Defendants. The Trial Court entered judgment on this verdict May 27, 1999.

Defendants filed a motion for new trial June 29, 1999, attaching the affidavit of Gwen B. Payne, a juror in the trial of the lawsuit. The affidavit, after establishing Ms. Payne's identity and stating facts of the trial date and verdict, stated that Plaintiff's award included sums for items not entered into evidence at trial, ". . . her airline ticket, existing medical bills, and attorney fees." Following hearing on the motion, the Trial Court granted Defendants' motion for new trial by memorandum opinion and order filed August 2, 1999.

Plaintiff filed a motion for permission to apply for interlocutory appeal under T.R.A.P. 9 on August 30, 1999, and the Trial Court granted this motion by order filed October 4, 1999. Interlocutory appeal was granted by this Court by order filed October 28, 1999 to resolve the issue of admissibility of the juror affidavit under T.R.E. 606(b), the affidavit being the only evidence that supports Defendants' motion for new trial.

## Discussion

The only issue before us is whether the Trial Court erred in granting Defendants' motion for new trial based upon the information contained in the juror's affidavit submitted by Defendants. Neither Plaintiff nor Defendants suggested a standard for our review of this issue. The Trial Court's order granting interlocutory appeal to Plaintiff stated the issue to be decided as "whether the facts set forth in the Juror's Affidavit in this case . . . involves [sic] extrinsic matters that render the jury verdict improper," and further states, "[t]here needs to be a more complete body of law established on what is an improper jury verdict." The threshold question of admissibility of the juror affidavit as evidence of grounds for a new trial governs our standard of review. "Admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Patton v. Rose*, 892 S.W.2d 410,

415 (Tenn. Ct. App. 1994). Therefore, our review of Plaintiff's allegation of error by the Trial Court in considering the juror's affidavit in granting Defendant's motion for new trial is under the abuse of discretion standard.

Contrary to the declaration of the Trial Court, we find the appellate opinions of this state adequate to address the issue posed on appeal under the undisputed facts concerning Defendants' motion for new trial. The order of the Trial Court was based upon the affidavit of one juror, Gwen B. Payne. The rule governing the procedure when the issue of jury misconduct has been raised is well established.

> Although jurors are permitted to weigh the evidence in light of their own knowledge and experience, their verdict must be based on the evidence introduced at trial. *Caldararo v. Vanderbilt University*, 794 S.W.2d 738 (Tenn. Ct. App.1990). Obviously, a verdict of a jury based on something other than the evidence introduced at trial is improper and should not be allowed to stand. However, in order to be granted a new trial due to such jury misconduct, there must be admissible evidence on the issue. Admissibility of evidence from jurors is controlled by Tenn.R.Evid. 606(b), which states:
>
> > (b) Inquiry into Validity of Verdict or Indictment.--Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the jury's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Patton v. Rose*, 892 S.W.2d at 413-414.

This analysis provides three exceptions to the rule that jury deliberations are not subject to later scrutiny by the courts: (1) extraneous prejudicial information improperly brought to the jury's attention, (2) outside influence improperly brought to bear on a juror, and (3) an agreement among the jurors in advance of deliberations to be bound by a quotient or gambling verdict. The statement in the affidavit relied upon by Defendants as grounds for a new trial based on jury misconduct is, "[t]he amount we eventually awarded Ms. Schwartz was calculated to compensate her for her airline ticket, existing medical bills and attorney fees." Defendants argued, and the Trial Court agreed, that these items were not admitted in evidence, and were, therefore, "[m]atters

extrinsic to (the) deliberations," thus proper for consideration by the Trial Court under T.R.E. 606(b). The Trial Court quoted the above-cited opinion in *Caldararo v. Vanderbilt University*, 794 S.W.2d at 742 for the statement that "matters constituting an external influence that could warrant a new trial include 'consideration of facts not admitted in evidence.'" While the descriptive phrasing used by the Trial Court and the cited opinions varies, only the first two exceptions to exclusion of juror testimony under T.R.E. 606(b), concerning extraneous information and outside influence, are material to this appeal as there is no allegation of the third exception, quotient verdict.

The Trial Court stated, "[a]s evidenced by the Payne affidavit facts not admitted in evidence were considered and did operate to increase the amount of damages awarded by the jury." First, it is questionable whether the subjective statement of one juror is sufficient to establish grounds for a new trial. "The law in this state is clear that evidence of a juror's subjective thought processes is not legally sufficient grounds for a new trial." *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 23 (Tenn. Ct. App. 1993) (citing *Caldararo*, 794 S.W.2d at 743-744 in finding that supportive comments made by a juror to defense counsel during trial did not form legal grounds for a new trial). Second, in order to be "extraneous information," the information must come from an extraneous source, not from a jury member.

> The Supreme Court has also recently held that "extraneous information" is information from a source outside the jury. Thus, intra-jury pressure or intimidation, premature jury deliberations contrary to the trial court's instructions, and speculation about a verdict's consequences, have been found to be internal matters that do not involve extraneous information or outside influence.

> *Caldararo*, 794 S.W.2d at 742 (citations omitted).

While the *Caldararo* opinion does recognize as external influence, "consideration of facts not admitted in evidence," 794 S.W.2d at 742, the Trial Court erred by relying upon this quotation as support for finding jury misconduct under one of the three exceptions. As noted above, the *Caldararo* court clarified that the first exception, extraneous information, "is information from a source outside the jury." The affidavit of juror Gwen B. Payne does not reference any influence or information from a source outside the deliberations of the jury, making any alleged influence or information "internal" to the discussions held among the jurors, and thus not covered by the first or second of the three exceptions. "Internal influences that are not grounds to overturn a verdict include: (1) *discussions among jurors*, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions." *Id.* (emphasis added). Further, nothing in the juror's affidavit at issue indicates anything outside deliberations "calculated to compensate" Plaintiff based upon the knowledge and experience brought to the panel by the individual jurors. "Normal jury deliberations that include discussions based upon the jurors' generalized knowledge and experience do not constitute grounds for overturning a verdict." *Id.* at 743. There is no allegation of quotient verdict on appeal, making the third of the three exceptions to the exclusion of juror testimony irrelevant to our discussion.

In addition to the broad discussion of policy and procedure found in *Caldararo*, this Court has previously addressed this issue under remarkably similar facts. In affirming the trial court's denial of a motion for new trial supported by affidavits of three jurors,

> each of whom stated that the jury "discussed the fact that the [plaintiffs] would have to pay their attorney fees out of any judgment we awarded [sic] [defendant]. These discussions affected the amount of the verdict and the verdict was increased by the amount we thought would be sufficient to pay the [plaintiffs'] attorneys."

*Strawn v. SCOA Industries, Inc.*, 804 S.W.2d 80, 82 (Tenn. Ct. App. 1990).

After quoting and discussing Federal Rules of Evidence 606(b), which had been adopted by the Tennessee Supreme Court and therefore determined the standard for admissibility of juror testimony in Tennessee prior to the adoption of T.R.E. Rule 606(b) effective January 1, 1990, Judge Goddard analyzed the affidavits and found that the testimony was not admissible.

> Several cases have been cited by the [plaintiffs] holding under various circumstances that the influence was not extraneous. In *Caldararo v. Vanderbilt University*, 794 S.W.2d 738, (1990), the jury foreman related to the other jurors information presumably acquired from his wife, a surgical nurse. In *State v. Higdon*, an unreported case of the Court of Criminal Appeals, filed March 15, 1990, in Nashville, 1990 WL 26772, one juror commented to the others that, "A shot naturally travels upward when it enters the body." In *State v. Hailey*, 658 S.W.2d 547 (Tenn.Cr.App.1983), one juror commented that, "the defendant has been tried and convicted of murder once before and he shouldn't have a second chance."

> We conclude, based on the foregoing authority, that the statements of the jurors are not extraneous and, therefore, not competent evidence.

*Id.* at 83.

We find that the analysis in *Strawn* applies to the juror affidavit at issue in this appeal. The information or influence was not extraneous. The affidavit of Gwen B. Payne was improperly admitted into evidence by the Trial Court upon inquiry into the jury's verdict under T.R.E. 606(b).

The reason for both the rule and its exceptions set forth in T.R.E. 606(b) excluding the testimony, or affidavits, of jurors concerning deliberations has been stated previously by this Court.

> This Rule has been said to be a compromise between important public policies, enabling the Court to protect litigants from verdicts tainted by extraneous prejudicial information or outside influence, while at the same time recognizing the importance of the inviolate nature of a jury's deliberations.

*Id.*

The rule precludes inquiries into the jury's deliberative process while allowing juror testimony concerning objective incidents or events that constitute external or extraneous influences on the jury. Thus, it insures that jurors will not be guarded in their deliberations for fear of later scrutiny by others. It also prevents jurors whose views are in the minority from manipulating the system by repudiating the verdict and thereby requiring a new trial.

*Caldararo*, 794 S.W.2d at 742 (citations omitted).

This "compromise" is necessary to protect the continuing viability of trial by jury. If Defendants' position was adopted, every jury verdict, and particularly the jury deliberations, would be subject to unfettered examination. For example, what if the jury either increased or decreased the amount of its verdict based upon the jurors' opinion that one of the parties or his attorney was obnoxious? That would not be a "fact" that was admitted in evidence, and under Defendants' position would be a basis for setting aside the jury verdict. Likewise, what if a plaintiff's counsel discovered after the jury verdict that the jury felt the plaintiff would throw away any money they awarded him and, therefore, awarded him less than they would have otherwise? Again, under Defendants' position this would be sufficient to set aside the jury verdict. What if a plaintiff was able to show that the jurors kept the amount of the verdict down because they were afraid a larger verdict would cause their taxes to increase, or the cost of a particular product they buy to increase? These are not facts admitted in evidence, but they would to be a basis, under Defendants' position, to attack the jury verdict. These are but a few examples of potential attacks on jury verdicts, attacks that would be limited only by the attorney's imagination, if Defendants' argument is accepted. T.R.E. 606(b) and Tennessee appellate decisions interpreting T.R.E. 606(b) prohibit such attacks. This limitation and compromise is necessary to protect the continuing viability of trial by jury in Tennessee.

We hold that the affidavit of juror Gwen B. Payne is inadmissible to establish grounds under any of the three exceptions to the exclusion of juror testimony under T.R.E. 606(b). As a matter of law, the Trial Court erred in admitting the affidavit into evidence under T.R.E. 606(b). There being no admissible evidence to support Defendants' motion for new trial, the Order of the Trial Court granting new trial is reversed, and this lawsuit remanded for enforcement of the judgment on the verdict of the jury previously entered by the Trial Court.

### Conclusion

The judgment of the Trial Court granting Defendants' motion for new trial is reversed, and this lawsuit remanded for enforcement of the judgment on the verdict of the jury previously entered. Costs of this appeal are taxed to the appellees, Lookout Mountain Caverns, Inc. and Ruby Falls.